**RAFII & ASSOCIATES, P.C.**
Robert Montes, Jr. (SBN 159137)
robert@rafiilaw.com
9100 Wilshire Blvd., Suite 465E
Beverly Hills, CA 90212
Telephone: 310.777.7877
Facsimile: 310.777.7855

Attorneys for Plaintiff
GIAVANNI MCKNIGHT

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIAVANNI MCKNIGHT,<br><br>    Plaintiff,<br><br>    v.<br><br>PARK MY FLEET, LLC and DOES 1-50, inclusive,<br><br><br>    Defendants. | Case No.:<br>**PLAINTIFF'S COMPLAINT FOR:**<br>(1)   Failure to Pay Minimum Wages [FLSA, 29 U.S.C § 206];<br>(2)   Failure to Pay Overtime Wages [29 U.S.C. § 207];<br>(3)   Race Discrimination [42 U.S.C. 2000e et seq.];<br>(4)   Sex/Gender Discrimination [42 U.S.C. 2000e et seq.];<br>(5)   Retaliation [42 U.S.C. 2000e et seq];<br>(6)   Failure to Pay the Statutorily Required Minimum Wage [Cal. Labor Code §§1197, 1197.1, 1194 and 1194.2; IWC Wage Orders 1-2001 § 9 (B) and 4-2001 § 9 (B)];<br>(7)   Failure To Pay for All Overtime Wages [Cal. Labor Code §§ 510, 1194, 1198];<br>(8)   Failure To Pay for All Meal Break Premiums [Cal. Labor Code §226.7, 512];<br>(9)   Failure To Pay for All Rest Break Premiums [Labor Code §226.7; 512];<br>(10)  Failure To Pay All Sick Time [Labor Code § 246 *et seq.*];<br>(11)  Wage Statement Violations [Cal. Labor Code §226(a)];<br>(12)  Unfair Competition [Cal. Bus. and Prof. Code § 17200, *et. seq.*];<br>(13)  Race Discrimination [Cal. Gov't Code § 12940];<br>(14)  Sex/Gender Discrimination [(Cal. Gov't Code § 12940];<br>(15)  Retaliation [Cal. Gov't Code § 12940(h)];<br>(16)  Failure to Prevent or Remedy Discrimination |

1

**COMPLAINT**

[Cal. Gov't Code § 12940]; and

(17)  Wrongful Termination in Violation of Public Policy, [California Common Law]

**JURY TRIAL DEMANDED**

Plaintiff GIAVANNI MCKNIGHT ("Plaintiff"), upon information and belief, alleges the following:

## PARTIES

1.      At all relevant times, Plaintiff was a natural person over the age of 18 who was, and is currently, residing in Nevada.

2.      At all relevant times, Plaintiff was employed by Defendant PARK MY FLEET, LLC ("Defendant"). Plaintiff was regularly expected to travel to and work in California throughout the duration of her employment to launch and manage several of Defendant's locations in the state.

3.      Plaintiff is informed and believes that at all relevant times, Defendant was a foreign limited liability company registered and licensed to do business under California law and that Defendant is a Delaware Corporation with its principal place of business at 8 The Green, Ste. A, Dover, DE 19901.

4.      Plaintiff is informed and believes, and based thereon alleges, that during the four years preceding the filing of the Complaint and continuing to the present, Defendants are and were corporations, business entities, individuals, and partnerships licensed to do business and actually doing business in the State of California.

5.       Plaintiff was the victim of Defendant's policies and/or practices complained of herein during the applicable statutory periods and has been deprived of the rights guaranteed to her by both California State law and federal law as described herein.

6.      Plaintiff does not know the true names or capacities (whether individual, partner, or corporate) of the defendants sued herein as DOES 1-50, inclusive. For that reason, said defendants are sued under such fictitious names, and Plaintiff will seek leave from this Court to amend this Complaint when such true names and capacities are discovered.

7.      Any reference in this Complaint to "Defendant," "Defendants," "Doe Defendants," "Park My Fleet, LCC," or "Park My Fleet," shall mean "Defendants and each of them."

2

**COMPLAINT**

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

8.      At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendants; and furthermore, the Defendants, and each of them, were the agents, servants and employees of each of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

9.      Plaintiff is informed and believes and based thereon alleges, that at all times material hereto, each of Defendants named herein were the agent, employee, alter ego and/or joint venturer of, or working in concert with each of other co-Defendants and were acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendants. Further, Plaintiff alleges that all Defendants were joint employers regarding Plaintiff in all aspects.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Defendants' violations of the Fair Labor Standards Act and Title VII pursuant to 28 U.S.C. § 1331.

11.      This Court has supplemental jurisdiction over Defendant's violations of the Labor Code, the California Business and Professions Code and the applicable Wage Orders pursuant to 28 U.S.C. § 1367.

12.      Cases that include Title VII claims are subject to 42 U.S.C. § 2000e–5(f)(3), a more specific venue provision than the general venue statute found at 28 U.S.C.A. § 1391. *Johnson v. Payless Drug Stores Northwest, Inc.,* 950 F.2d 586 (9th Cir.1991).

13.      When a plaintiff files a suit that includes Title VII claims covered by the more specific venue provision along with claims that (standing alone) would be subject to the general venue statute, the narrower venue provision of Title VII controls. *Dehaemers v. Wynne*, 522 F. Supp. 2d 240 (D.D.C. 2007); *Haley v. Astrue*, 667 F. Supp. 2d 138 (D.D.C. 2009); *see also* 12 Fed. Proc. Forms § 45:39. The purpose behind applying this special test for Title VII cases is to "limit venue to the judicial district concerned with the alleged discrimination." *Passantino v. Johnson & Johnson Consumer*

*Prod., Inc.,* 212 F.3d 493, 504 (9th Cir. 2000) (citing *Stebbins v. State Farm Mutual Auto Ins. Co.,* 413 F.2d 1100, 1102 (D.C.Cir.1969); *Ford v. Valmac Industries, Inc.,* 494 F.2d 330, 332 (10th Cir.1974)).

14.    Under 42 U.S.C. § 2000e–5(f)(3), an action under Title VII may be brought, in relevant part, in "any judicial district in the state in which the unlawful employment practice is alleged to have been committed."

15.    This Complaint alleges three claims that arise from Title VII: race discrimination, sex discrimination, and retaliation.

16.    The claims, transactions, and obligations pleaded and referred to herein occurred, partially or wholly, in Fresno County, San Bernadino County, and San Joaquin County, California.

17.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district

## FACTUAL ALLEGATIONS

18.    Plaintiff began working for Defendant on June 22, 2022, as Park My Fleet, LLC Launch Manager. Park My Fleet is a national automobile fleet logistics company.

19.    Specifically, Plaintiff was hired to help develop Defendant's Western Region by overseeing the launch of multiple Park My Fleet facilities across several western states. Plaintiff's primary duty as a Launch Manager was to help develop and open new Park My Fleet facilities.

20.    Plaintiff's work schedule included extensive travel throughout her employment. Typically, she traveled Monday-Friday to various cities across Defendant's Western Region and returned to Las Vegas, Nevada on the weekends. Other times, Plaintiff would spend several weeks in one city where Defendant either had or was attempting to open a facility.

21.    When she was hired as a Launch Manager, Plaintiff was classified by Defendant as exempt under the Fair Labor Standards Act and made a salary of $65,000 per year.

22.    Plaintiff was paid $50 per diem per day while she was traveling and had a company credit card, but was not always permitted to use it. She often had to pay for her travel arrangements, food, and supplies for facilities with her own money and submit records to be reimbursed. There were often long waiting periods for reimbursement, an issue that Plaintiff and other employees complained

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

to Defendant about on several occasions.

23. Eventually, Plaintiff was promoted to the position of Regional Manager and was also expected to hire, train, and manage the supervisors and staff of the parking facilities after launching them. Despite this significant additional responsibility and an entirely new skill set necessary for personnel management, Defendant did not provide Plaintiff with the additional training needed for that role, nor did it compensate her for the extra time it took.

24. Also working for Defendant during Plaintiff's employment were Regional Managers Michael Molita and Greg Hamilton. Mr. Molita and Mr. Hamilton are both white men.

25. Plaintiff was continuously expected to be responsible for a larger workload than Mr. Molita and Mr. Hamilton, including managing nine (9) locations (Portland, Denver, Seattle, Las Vegas, Phoenix, San Bernardino, Redlands, Fresno, and Lathrop), while they were only responsible for managing six (6) locations each.

26. Plaintiff's requests for time off were denied on a regular basis, while Mr. Molita and Mr. Hamilton were granted leave whenever they requested it, for whatever reason (including to attend a bachelor party on at least one occasion).

27. In November 2022, Plaintiff complained to Lori Mack, Defendant's Human Resources representative, about the ways in which the terms and conditions of her employment differed from those of her white, male counterparts. She also complained about being denied a pay raise, even as she had gotten a promotion and taken on a significant number of additional duties since being hired.

28. After her first complaint brought about no changes, Plaintiff complained to Lori Mack for the second time in December 2022 about the different terms and conditions of her employment compared to Mr. Molita and Mr. Hamilton.

29. On December 12, 2022, Plaintiff was written up for two alleged "dress code violations," although Plaintiff was not aware of a dress code policy and does not believe that one even exists. The first alleged dress code violation dated back five months from the time Plaintiff was disciplined and was for wearing a t-shirt while she was off-duty. The second alleged dress code violation was the result of Defendant extending what was supposed to be a five-day trip to Portland

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

to three weeks, which put a strain on Plaintiff's wardrobe choices as she had not packed for that long.

30.     Plaintiff argued against these violations at the time because it seemed to her that Defendant was manufacturing disciplinary marks on her record in order to deny giving her a raise she was due for.

31.     In January 2023, Plaintiff informed Defendant's Operations Manager, Sara Trovost, of several employment law violations taking place at several of Park My Fleet's California facilities. Specifically, job sites were lacking the legally-required notices posted and the California employees were not taking their meal or rest breaks. This issue was never addressed.

32.     Additionally, between December 2022 and January 2023, three thefts occurred at different facilities in Defendant's Western Region: one in Portland, one in San Bernadino, and one in Redlands.

33.     None of the on-site supervisors for those locations (who are all male and nonblack) were written up or disciplined by Defendant, despite having failed to physically secure and oversee the facilities in accordance with their duties.

34.     Instead, Plaintiff–who was not in California at the time–was held responsible for both thefts and was formally written up and disciplined. Plaintiff brought up that both thefts appeared to be inside jobs, but her concerns were dismissed by Sara Trovost.

35.     The supervisors at the locations were eventually terminated, a decision that was approved by both Plaintiff and OM Trovost, due to their negligence that allowed the thefts to occur.

36.     On February 3, 2023, Plaintiff was contacted by Samantha Miles, Defendant's Head of Human Resources,  and told that Park My Fleet was "out of compliance" due to Plaintiff's mistake because Plaintiff had allegedly failed to timely pay a California employee after their termination. However, this had never been part of Plaintiff's job duties before, as it was usually the HR department that cut checks for Defendant's employees.

37.     On February 6, 2023, Defendant terminated Plaintiff's employment through Samantha Miles and Sara Trovost. The alleged reason for her termination was that three thefts had occurred in her region, that three supervisors had been let go in her region, and that the thefts were not escalated

or brought to the attention of leadership quickly (despite that Sarah Trovost had been involved soon after they occurred and approved Plaintiff's decision to terminate the supervisors in question).

38.     Plaintiff received a severance package on February 13, 2023.

39.     Plaintiff exhausted her aministrative remedies as of  December 29, 2023 in Nevada and March 28, 2024 in California.  See attached Right to Sue letters at Exhibit A.

## **FIRST CAUSE OF ACTION**

## **FAILURE TO PAY MINIMUM WAGES**

## **(FLSA, 29 U.S.C § 206)**

40.     Plaintiff incorporates and realleges all paragraphs above.

41.     Under the FLSA, "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [federal minimum wage rate]…." 29 U.S.C. § 206(a)(l).

42.     Here, by failing to pay Plaintiff any wages whatsoever for otherwise compensable work time, Defendant failed to pay Plaintiff at least federal minimum wage as required by the FLSA.

43.     Defendant's  payment of zero wages to Plaintiff for hours worked was a willful violation of the FLSA, and Defendant knew or should have known that its payroll policies and practices were unlawful.

44.     Wherefore, Plaintiff demands payment by Defendant at her regular pay rate or the federal minimum wage rate, whichever is higher, for all hours worked during the FLSA period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

## **SECOND CAUSE OF ACTION**

## **FAILURE TO PAY OVERTIME WAGES**

## **(29 U.S.C. § 207)**

45.     Plaintiff incorporates and realleges all paragraphs above.

46.     The FLSA provides that "[N]o employer shall employ any of his employees who in

any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

47.    Here, at all relevant times, Defendant failed to pay one and one-half times the applicable regular rate of pay for all hours worked over 40 by Plaintiff in any given workweek.

48.    Defendant's failure to pay overtime to Plaintiff, including Defendant's misclassification of Plaintiff as exempt, was a willful violation of the FLSA. Defendant knew or should have known that its payroll policies and practices were unlawful.

49.    Wherefore, Plaintiff demands payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

### RACE DISCRIMINATION

### (42 U.S.C. 2000e et seq.)

50.    Plaintiff incorporates and realleges all paragraphs above.

51.    42 U.S.C. sec. 2000e-2 says, in relevant part, that "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race… (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race…"

52.    Plaintiff was subjected to different terms and conditions of her employment than her white counterparts when Defendant's other Regional Managers, Mr. Molita and Mr. Hamilton–

**COMPLAINT**

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

Plaintiff's counterparts–were given a significantly lighter workload than Plaintiff on a regular basis in the form of three less facilities to manage.

53. Further, Plaintiff was subject to harsher terms and conditions of employment than her white counterparts when her time-off requests were routinely denied, while Mr. Molita's and Mr. Hamilton's were granted without restriction.

54. Defendant's stated reasons for Plaintiff's termination are also clearly pretextual in light of the circumstances and point to discrimination on the basis of race. This includes the stated reason for her termination being the thefts and firing of the supervisors who allowed them to happen (both nonblack males who were not held responsible by Defendant for the thefts).

55. As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

## FOURTH CAUSE OF ACTION

## SEX/GENDER DISCRIMINATION

### (42 U.S.C. 2000e et seq.)

56. Plaintiff incorporates and realleges all paragraphs above.

57. 42 U.S.C. sec. 2000e-2 says, in relevant part, that "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's… sex… (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's… sex…"

58. Plaintiff was subjected to different terms and conditions of her employment than her male counterparts when Defendant's other Regional Managers, Mr. Molita and Mr. Hamilton– Plaintiff's counterparts–were given a significantly lighter workload than Plaintiff on a regular basis

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

in the form of three less facilities to manage.

59.    Further, Plaintiff was subject to harsher terms and conditions of employment than her male counterparts when her time-off requests were routinely denied, while Mr. Molita's and Mr. Hamilton's were granted without restriction.

60.    Defendant's stated reasons for Plaintiff's termination are also clearly pretextual in light of the circumstances and point to discrimination on the basis of sex. This includes the stated reason for her termination being the thefts and firing of the supervisors who allowed them to happen (both nonblack males who were not held responsible by Defendant for the thefts).

61.    As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest

**FIFTH CAUSE OF ACTION**

**RETALIATION**

**(42 U.S.C. 2000e et seq.)**

62.    Plaintiff incorporates and realleges all paragraphs above.

63.    42 U.S.C. § 2000e–3(a) prohibits employer retaliation "because [an employee] has opposed ... an unlawful employment practice ... or ... made a [Title VII] charge."

64.    Engaging in protected activities encompasses not only formal filing of complaints, but also includes opposition to practices deemed prohibited by FEHA. California courts, in their expansive interpretation, have held that any act of opposition to forbidden practices is protected, even if the original grievance isn't proven, provided the opposition was made in good faith belief of wrongdoing. See *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028 (2005); *Cooper v. Rykoff- Sexton, Inc.*, 24 Cal.App.4th 614 (1994).

65.    Here, Plaintiff began suffering adverse employment actions, including misplaced and pretextual disciplinary actions and write-ups, soon after her first complaint to Lori Mack about discrimination in November 2022. When her complaints were not addressed, she continued to speak

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS


up about both her differing terms and conditions of employment from her white, male counterparts, but also the ways in which Defendant was not in compliance with California law at its California facilities.

66.    Defendant's cumulative retaliatory actions not only thwarted Plaintiff's professional growth; it also led to her eventual termination on February 6, 2022.

67.    Plaintiff alleges that as a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses. As a result, Plaintiff seeks all damages and remedies available to her under law including, but not limited to, front pay, back pay, compensatory and punitive damages, as well as attorney's fees and costs.

## SIXTH CAUSE OF ACTION

## FAILURE TO PAY THE STATUTORILY REQUIRED MINIMUM WAGE

## (Cal. Lab. Code §§1197, 1197.1, 1194, and 1194.2)

68.    Plaintiff incorporates and realleges all paragraphs above.

69.    This cause of action is brought pursuant to Labor Code §§ 1197, 1197.1, 1194, and 1194.2, which establish that the minimum wage set by a Wage Order or any applicable state or local law is the lowest amount that the employees must be paid, and grant the right for a private right of action for failure to pay at least the minimum wage fixed by a Wage Order, or the applicable state or local law.

70.    As such, at all times relevant herein, Defendant was required to pay Plaintiff at least two-times the State minimum wage pursuant to Labor Code §§ 1197, 1197.1, 1194 and 1194.2.

71.    Defendant willfully failed to conform its pay practices to the relevant Labor Code and Wage Orders requirements, unlawfully causing Plaintiff to be paid wages less than the Statutorily Required Minimum Wage throughout her employment.

72.    Such a pattern, practice and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action for the unpaid balance of the full amount of damages owed, including

interest thereon, penalties, attorney's fees, and costs of suit according to §§ 210, 558(a), 1194, 1194.2, 1197, 1197.1, 1199 and 2698.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PAY ALL OVERTIME WAGES**

**(Cal. Lab. Code §§ 204, 210, 510, 558, 1194, and 1198)**

73.     Plaintiff incorporates and realleges all paragraphs above.

74.     This cause of action is brought pursuant to Labor Code §§ 204, 210, 510, 558, 1194, and 1198, which provide that non-exempt employees are entitled to overtime wages for all overtime hours worked and provide a private right of action for the failure to pay all overtime compensation for overtime work performed.

75.     Labor Code § 510 requires an employer to compensate an employee who works more than eight (8) hours in one workday, forty (40) hours in a workweek, and for the first eight (8) hours worked on the seventh consecutive day, no less than one and one-half times (1 1/2) the regular rate of pay. In addition, Labor Code § 510 obligates employers to compensate employees at no less than twice the regular rate of pay when an employee works more than twelve (12) hours in a workday or more than eight (8) hours on the seventh consecutive day of work. Pursuant to Section 3 of the applicable Wage Orders, non-exempt employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek.

76.     The foregoing policies and practices are unlawful and create entitlement to recovery by Plaintiff in a civil action for the unpaid amount of overtime wages, including interest thereon, statutory penalties, attorney's fees, and costs of suit according to Labor Code §§ 204, 210, 510, 1194, and 1198.

**EIGHTH CAUSE OF ACTION**

**MEAL PERIOD VIOLATIONS**

**(Cal. Lab. Code §226.7)**

77.     Plaintiff incorporates and realleges all paragraphs above.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

12

**COMPLAINT**

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

78.    Pursuant to Labor Code §226.7, employees are entitled to one hour of pay at their regular rate for each non-compliant or missed meal and/or rest break.

79.    As alleged above, due to Defendants' willful failure to compensate Plaintiff at least the Statutorily Required Minimum Wage, Plaintiff was not paid meal period premiums for missed or non-compliant meal periods at the appropriate "regular rate of pay" as required by *Ferra* and Labor Code § 226.7.

80.    As a result, Plaintiff was not paid all wages she is owed. Defendant is responsible for paying back wages, including interest thereon, statutory penalties, and costs of suit pursuant to Labor Code §§ 226.7, 512, the applicable Wage Orders, and Civil Code §§ 3287(b) and 3289.

## NINTH CAUSE OF ACTION

## REST PERIOD VIOLATIONS

## (Cal. Lab. Code §226.7)

81.    Plaintiff incorporates and realleges all paragraphs above.

82.    Pursuant to Labor Code §226.7, employees are entitled to one hour of pay at their regular rate for each non-compliant or missed meal and/or rest break.

83.    As alleged above, due to Defendant's willful failure to compensate Plaintiff at least the Statutorily Required Minimum Wage, Plaintiff was not paid rest period premiums for missed or non-compliant rest periods at the appropriate "regular rate of pay" as required by *Ferra* and Labor Code § 226.7. As a result, Plaintiff was not paid all wages she is owed.

84.    The foregoing violations create an entitlement to recovery by Plaintiff in a civil action for the unpaid amount of rest period premiums owing, including interest thereon, statutory penalties, and costs of suit pursuant to Labor Code §§ 226.7 and 516, the applicable Wage Orders, and Civil Code §§ 3287(b) and 3289.

## TENTH CAUSE OF ACTION

## FAILURE TO PAY ALL SICK TIME

## (Cal. Lab. Code § 246; § 558; § 1194.2; § 1197.1, § 1198; and § 1199)

85.    Plaintiff incorporates and realleges all paragraphs above.

86.     Labor Code § § 246(a),(b), state that "[a]n employee who, on or after July 1, 2015, works in California for the same employer for 30 or more days within a year from the commencement of employment is entitled to paid sick days. . . at the rate of not less than one hour per every 30 hours worked, beginning at the commencement of employment."

87.     In addition, Labor Code § 246(l)(1) provides that paid sick time for non-exempt employees must be "calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek."

88.     Finally, Labor Code §246(i) requires employers to "provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off leave an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement described in Section 226 or in a separate writing provided on the designated pay date with the employee's payment of wages."

89.     Defendant failed to conform its pay practices to the requirements of the law. At all times relevant herein, Defendant was required to pay Plaintiff for all accrued sick leave taken at the appropriate regular rate of pay pursuant to California Labor Code § 246, 558, 1194.2, 1197.1, 1198, and 1199. However, Defendant has failed to do so.

90.     The foregoing policies and practices are unlawful and create entitlement to recovery by Plaintiff in a civil action for the unpaid amount of sick time wages, including interest thereon, statutory penalties, attorney's fees, and costs of suit according to Labor Code §§ 246, 558, 1194.2, 1197.1, 1198 and the applicable Wage Orders.

## ELEVENTH CAUSE OF ACTION

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

### (Cal. Lab. Code §226)

91.     Plaintiff incorporates and realleges all paragraphs above.

92.     Labor Code 226(a) states in pertinent part the following: "(a) An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as

a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

93.    During Plaintiff's employment, Defendant provided her with wage statements that are inadequate under Labor Code Section 226(a).

94.    As a result of Defendant's issuance of inaccurate itemized wage statements to Plaintiff in violation of Section 226(a) of the California Labor Code, Plaintiff is entitled to recover an initial penalty of $50, and subsequent penalties of $100, up to an amount not exceeding an aggregate penalty of $4,000 from Defendant pursuant to section 226(e) of the Labor Code, as well as costs and reasonable attorneys' fees.

## TWELFTH CAUSE OF ACTION

## UNFAIR COMPETITION

## (Cal. Bus. & Prof. Code § 17200, § 17208)

95.    Plaintiff incorporates and realleges all paragraphs above.

96.    With respect to Plaintiff, Defendant engaged in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 et seq., by failing to pay her for overtime wages, meal and rest period premiums, and sick time by failing to properly calculate the "regular rate of pay,", by failing to provide accurate wage statements, and by failing to pay all earned wages at the time of separation from employment.

97.    Defendant's utilization of these unfair and/or unlawful business practices deprived

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Plaintiff of compensation to which she is legally entitled; constitutes unfair and/or unlawful competition; and provides an unfair advantage over Defendant's competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable wage and hour laws.

98.    Because Plaintiff is a victim of Defendant's unfair and/or unlawful conduct alleged herein, Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants pursuant to Business and Professions Code §§ 17203 and 17208.

99.    The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

## THIRTEENTH CAUSE OF ACTION

## RACE DISCRIMINATION

### (Cal. Gov't Code § 12940)

100.    Plaintiff incorporates and realleges all paragraphs above.

101.    California's Fair Employment and Housing Act ("FEHA") explicitly states that it unlawful for employers to discriminate against individuals due to their race or color in the terms, conditions or privileges of their employment Cal. Gov. Code §12940(a).

102.    Plaintiff was subjected to different terms and conditions of her employment than her white counterparts when Defendant's other Regional Managers, Mr. Molita and Mr. Hamilton–Plaintiff's counterparts–were given a significantly lighter workload than Plaintiff on a regular basis in the form of three less facilities to manage.

103.    Further, Plaintiff was subject to harsher terms and conditions of employment than her white counterparts when her time-off requests were routinely denied, while Mr. Molita's and Mr. Hamilton's were granted without restriction.

104.    Defendant's stated reasons for Plaintiff's termination are also clearly pretextual in light of the circumstances and point to discrimination on the basis of race. This includes the stated reason for her termination being the thefts and firing of the supervisors who allowed them to happen (both

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

nonblack males who were not held responsible by Defendant for the thefts).

105. As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive damages, attorneys' fees, costs, and interest.

### FOURTEENTH CAUSE OF ACTION

### SEX/GENDER DISCRIMINATION

### (Cal. Gov't Code § 12940(a))

106. Plaintiff incorporates and realleges all paragraphs above.

107. California's Fair Employment and Housing Act ("FEHA") explicitly states that it unlawful for employers to discriminate against individuals due to their gender, gender identity, and gender expression in the terms, conditions, or privileges of their employment Cal. Gov. Code §12940(a).

108. Plaintiff was subjected to different terms and conditions of her employment than her male counterparts when Defendant's other Regional Managers, Mr. Molita and Mr. Hamilton–Plaintiff's counterparts–were given a significantly lighter workload than Plaintiff on a regular basis in the form of three less facilities to manage.

109. Further, Plaintiff was subject to harsher terms and conditions of employment than her male counterparts when her time-off requests were routinely denied, while Mr. Molita's and Mr. Hamilton's were granted without restriction.

110. Defendant's stated reasons for Plaintiff's termination are also clearly pretextual in light of the circumstances and point to discrimination on the basis of sex. This includes the stated reason for her termination being the thefts and firing of the supervisors who allowed them to happen (both nonblack males who were not held responsible by Defendant for the thefts).

111. As a result of Defendant's wrongful actions, Plaintiff has sustained significant general and special damages to be proven at trial. Plaintiff seeks all damages and remedies available to her under law including, but not necessarily limited to, compensatory, consequential, and punitive

RAFII & ASSOCIATES, P. C.
EXCELLENCE | COMMITMENT | RESULTS

damages, attorneys' fees, costs, and interest.

## FIFTEENTH CAUSE OF ACTION

## RETALIATION

### (Cal. Gov't Code § 12940(h))

112.     Plaintiff incorporates and realleges all paragraphs above.

113.     Pursuant to California Government Code §12940(h), it is an unlawful employment practice, unless based upon a bona fide occupational qualification, for an employer to discharge, expel, or otherwise discriminate against any person because the person has exposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this section.

114.     Engaging in protected activities encompasses not only formal filing of complaints, but also includes opposition to practices deemed prohibited by FEHA. California courts, in their expansive interpretation, have held that any act of opposition to forbidden practices is protected, even if the original grievance isn't proven, provided the opposition was made in good faith belief of wrongdoing. See *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028 (2005); *Cooper v. Rykoff- Sexton, Inc.*, 24 Cal.App.4th 614 (1994).

115.     Here, Plaintiff began suffering adverse employment actions, including misplaced and pretextual disciplinary actions and write-ups, soon after her first complaint to Lori Mack about discrimination in November 2022. When her complaints were not addressed, she continued to speak up about both her differing terms and conditions of employment from her white, male counterparts, but also the ways in which Defendant was not in compliance with California law at its California facilities.

116.     Defendant's cumulative retaliatory actions not only thwarted Plaintiff's professional growth; it also led to her eventual termination on February 6, 2022.

117.     Plaintiff alleges that as a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer losses in earnings, equity and other employment benefits and has incurred other economic losses. As a result, Plaintiff seeks all damages

and remedies available to her under law including, but not limited to, front pay, back pay, compensatory and punitive damages, as well as attorney's fees and costs.

## SIXTEENTH CAUSE OF ACTION

## FAILURE TO PREVENT OR REMEDY DISCRIMINATION AND RETALIATION

### (Cal. Gov't Code § 12940(k))

118.    Plaintiff incorporates and realleges all paragraphs above.

119.    Section 12940(k) of the Fair Employment and Housing Acts mandates employers to take reasonable all steps to prevent discrimination and harassment from occurring. See Cal. Gov. Code §12940(k).

120.    Defendants have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 *et seq.*, by failing to pay for overtime wages, meal and rest period premiums as well as sick time by failing to properly calculate the "regular rate of pay," by failing to provide accurate wage statements, and by failing to pay all earned wages at the time of separation from employment.

121.    Defendants' utilization of these unfair and/or unlawful business practices deprives Plaintiff of compensation to which she is legally entitled, constitutes unfair and/or unlawful competition, and provides an unfair advantage over Defendants' competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable wage and hour laws.

122.    Because Plaintiff is a victim of Defendants' unfair and/or unlawful conduct alleged herein, Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants pursuant to Business and Professions Code §§ 17203 and 17208.

123.    The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

124.    Plaintiff was compelled to retain the services of counsel to file this court action to protect his interests, to obtain restitution and injunctive relief on behalf of Defendants' current hourly

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

non-exempt employees and to enforce important rights affecting the public interest. Plaintiff has thereby incurred the financial burden of attorneys' fees and costs, which he is entitled to recover under Code of Civil Procedure § 1021.5.

## SEVENTEENTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (California Common Law)

125.    Plaintiff incorporates and realleges all paragraphs above.

126.    As previously alleged above, Plaintiff was  an exemplary employee. As a result of Defendant's unlawful employment practices Plaintiff exercised her statutory right, and constitutionally protected right, to demand that the race, sex, and gender discrimination she was subjected to come to a stop.  As a result of this legally protected activity, Defendant engaged in a course of conduct to terminate her employment. Plaintiff's termination came on the heels of her complaints, and as such Defendant's actions violated Plaintiff's rights to engage in a protected activity. Plaintiff's complaints regarding her race, sex, and gender discrimination, was the motivating reasons behind Defendant's termination of Plaintiff.

127.    Defendant knew or should have known that its policies and practices were inadequate and did not initiate reform and/or protective measures in disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to exemplary damages in the sum according to proof against Defendant because of the aforementioned malice and oppression against Plaintiff.

128.    As a direct and proximate result of Defendant's conduct, Plaintiff has experienced restlessness, anxiety, stress, and harm to her personal and professional dignity.  Plaintiff has also manifested physical symptoms proximately caused by Defendant's actions.  Plaintiff has also suffered emotional damages as a result of the treatment by Defendant, including worrying about her financial future and her professional standing, all in excess of the minimum jurisdiction of this Court.

129.    As a result of Defendant's actions alleged herein, Plaintiff has suffered compensatory damages including, but not limited to, the following: loss of earnings, loss of benefits (including health insurance and other employee benefits). In addition, pecuniary compensation will not compensate

1 | Plaintiff fully for the loss of professional standing and/or it will be difficult to compute damages from
2 | the loss of professional standing.

### **PRAYER FOR RELIEF**

4 | WHEREFORE Plaintiff prays for relief as follows:

1.   For compensatory damages, including front pay, back pay, lost wages and benefits, out-of-pocket costs and expenses, emotional distress damages, punitive damages, as well as other special and general damages, according to proof;

2.   For reasonable attorneys' fees authorized by statute, common law, or equity;

3.   For costs of suit incurred herein;

4.   For pre-judgment and post-judgment interest at the maximum legal rate;

5.   For such other and further relief as the Court may deem just and proper.

DATED: March 28, 2024                     **RAFII & ASSOCIATES, P.C.**

By: _____

ROBERT MONTES, JR.
*Attorneys for Plaintiff*
*Giavanni Mcknight*



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

# EXHIBIT "A"



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 28, 2024

Amanda Moradzadeh
9100 Wilshire Blvd STE 465E
Beverly hills, CA 90212

RE:    **Notice to Complainant's Attorney**
       CRD Matter Number: 202403-24137928
       Right to Sue: Mcknight / Park My Fleet, LLC

Dear Amanda Moradzadeh:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 28, 2024

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202403-24137928
       Right to Sue: Mcknight / Park My Fleet, LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 28, 2024

Giavanni Mcknight

,

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202403-24137928
       Right to Sue: Mcknight / Park My Fleet, LLC

Dear Giavanni Mcknight:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective March 28, 2024 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Giavanni Mcknight                                          CRD No. 202403-24137928

                              Complainant,

vs.

Park My Fleet, LLC
8 The Green Ste A
Dover, DE 19901

                              Respondents

---

**1.** Respondent **Park My Fleet, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Giavanni Mcknight**, resides in the City of **,** State of **.**

**3**. Complainant alleges that on or about **February 6, 2023**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's sex/gender, race (includes hairstyle and hair texture) and as a result of the discrimination was terminated.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated.

**Additional Complaint Details:** Giavanni Mcknight ("Mcknight"), an African American, had been employed by Park My Fleet, LLC from June 22, 2022 through February 6, 2023 when she was unceremoniously terminated. Mcknight was eventually promoted from her original position as a Launch Manager to a Regional Manager and was tasked expected to hire, train and manage the supervisors and staff of the parking facilities after launching them on top of her original duties to travel to various cities across the Western Region to help develop and open new parking facilities. Working alongside Mcknight was Mr. Molita and Mr.

-1-
*Complaint – CRD No. 202403-24137928*

Date Filed: March 28, 2024

CRD-ENF 80 RS (Revised 12/22)

Hamilton, both white men. Mcknight was expected to be responsible for a larger workload than both Mr. Molita and Mr. Hamilton. Mcknight managed 9 locations whereas Mr. Molita and Mr. Hamilton managed only 6 locations. In addition, Mcknight's requests for time off were denied on a regular basis whereas Mr. Molita and Mr. Hamilton's requests were granted whenever they requested it, for whatever reason including but not limited to attending a bachelor party. In November 2022, Mcknight complained to the Human Resources Representative, Lori Mack, regarding the discrimination. As the company failed to investigate, she again complained to Lori Mack in December 2022 about the different terms and conditions of her employment compared to Mr. Molita and Mr. Hamilton. In retaliation for her complaints, Mcknight received two write ups for allegedly violating the companies dress code. The first write up was dated back 5 months from the time Mcknight was disciplined. The second write up was the result of the company extending what was supposed to be a 5 day trip to 3 weeks. During this time, Mcknight did not have enough clothes as she only packed for 5 days. In January 2023, Mcknight then received another writeup and was held responsible for thefts that occurred at different facilities than where Mcknight was located (Portland, San Bernadino and Redlands) despite the fact that none of the other on-site supervisors (all male and nonblack) for those location were written up or disciplined and whose duties include to physically secure and oversee those facilities. Mcknight explained to the Operations Manager, Sara Trovost, that she was not in California at the time of the thefts and it seemed to be inside jobs; however, her concerns were dismissed. Following this incident those supervisors were eventually terminated, a decision that was approved by Plaintiff and Sara Trovost due to their negligence that allowed the thefts to occur. On February 2023, Plaintiff was contacted by the Head of the Human Resoources Department, Samantha Miles, and was reprimanded for failing to timely pay a California employee after their termination despite the fact that this had never been a part of her job duties, as it was the custom and practice of the Human Resources Department to cut checks. On February 6, 2023 Plaintiff was then terminated by the company. The reason being that the three thefts had occured in her region, those three supervisors were terminated and that the thefts were not escalated or brought to the attention of leadership quickly enough despite the fact that Sarah Trovost was informed and involved soon after the thefts occured and even approved of Mcknight's decision to terminate those supervisors. Mcknight then received a severance package on February 13, 2023.

Date Filed: March 28, 2024

1  VERIFICATION

2  I, **Amanda Moradzadeh**, am the **Attorney** in the above-entitled complaint.  I have
3  read the foregoing complaint and know the contents thereof.  The matters alleged are
   based on information and belief, which I believe to be true.

4
   On March 28, 2024, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                                    **Beverly Hills**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          -3-
                              *Complaint – CRD No. 202403-24137928*
27
   Date Filed: March 28, 2024
28
                                                              CRD-ENF 80 RS (Revised 12/22)